UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JULIUS LEONARD PORTER, JR.

                                    Plaintiff,

                                                            DECISION AND ORDER

                                                            11-CV-6537L

                        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                                    Defendant.
_____

## INTRODUCTION

Plaintiff Julius Porter, Jr. brings this action under 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that he is not disabled under the Social Security Act, and therefore, is not entitled to a period of Social Security disability and disability insurance benefits.

Plaintiff originally applied for Social Security disability benefits on April 9, 2008, alleging that he had been disabled since  March 16, 2007, due to, among other things, post-traumatic stress disorder, panic attacks, back and neck pain, memory loss, knee surgery and anger management issues.  (Tr. 186).   Plaintiff's application was initially denied.  Plaintiff then requested a hearing before an administrative law judge ("ALJ").

The hearing was held before ALJ James E. Dombeck on March 18, 2010 (Tr. 27-99).  The ALJ determined that plaintiff was not disabled under the Act (Tr. 12-20), and that decision became the final decision of the Commission on September 15, 2011, when the Appeals Council denied plaintiff's request for review.  (Tr. 1-3).  This appeal followed.

The plaintiff has moved (Dkt. #7) and the Commissioner has cross-moved (Dkt. #10) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). As discussed below, the Commissioner's decision is affirmed, and the complaint is dismissed.

## FACTUAL BACKGROUND

Familiarity with the pertinent facts, summarized below, is presumed.

Plaintiff was born January 4, 1961 and was 49 years old at the time of his hearing. (Tr. 19). He has a high school education, two years of college with an Associate in Arts degree in marketing and management, and an apprenticeship. (Tr. 19). He has previously worked as a copier rebuilder, factory kit puller, and telemarketing customer service representative. (Tr. 187).

Plaintiff's medical diagnoses, for which ample treatment records were provided to the ALJ, consist primarily of chronic back and knee pain, a personality disorder and other mental health issues.

## DISCUSSION

### I. Standard for Determining Disability

A person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). In order to determine whether a claimant is disabled, an ALJ employs a five-step inquiry:

> The first step determines whether the claimant is engaged in 'substantial gainful activity.' If he is, benefits are denied. If he is not engaged in such activity, the process moves to the second step, which decides whether the claimant's condition or impairment is 'severe' – i.e., one that significantly limits his physical or mental ability to do basic work activities. If the impairment is not severe, benefits are denied. If the impairment is severe, the third step determines whether the claimant's impairments meet or equal those set forth in the 'Listing of Impairments'. . . contained in subpart P, appendix 1, of the regulations. . . . If the claimant's impairments are not listed, the process moves to the fourth step, which assesses the

> individual's 'residual functional capacity' (RFC); this assessment measures the claimant's capacity to engage in basic work activities.  If the claimant's RFC permits him to perform his prior work, benefits are denied.  If the claimant is not capable of doing his past work, a decision is made under the fifth and final step whether, in light of his RFC, age, education, and work experience, he has the capacity to perform other work.  If he does not, benefits are awarded.

*Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986) (citations omitted).  It is well-settled that plaintiff bears the burden of proof at the first four steps of the analysis.  At the fifth and final stage of this process, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work that exists in the national economy.  *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).


II.     **The ALJ's Decision**

At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 16, 2007 (Tr. 15).  The ALJ concluded that plaintiff had severe impairments, consisting of a depressive disorder, not otherwise specified, back pain, and knee pain. (Tr. 16).

At step four, after summarizing the plaintiff's medical records and the opinions of his treating, examining and reviewing physicians, some of which appeared to conflict with one another, the ALJ concluded that plaintiff retained the RFC to perform the physical requirements of the full range of sedentary work, except for mild mental limitations requiring that the work be simple and low stress.  (Tr. 18).

The ALJ concluded that because plaintiff was able to perform a full range of sedentary work, and because his non-exertional limitations had no significant impact on that range, the Medical-Vocational Guidelines directed a finding of "not disabled."  (Tr. 20).

### III.  Standards of Review

The Commissioner's decision that plaintiff was ineligible to receive benefits must be affirmed if it applies the correct legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force," a district court cannot substitute its own judgment for that of the Commissioner.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled.").

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law.  *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *accord Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).  The Court must determine if the Commissioner's decision applied the correct legal standards in finding that plaintiff was not disabled.  "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112.  Only after finding that the correct legal standards were applied should the Court consider the substantiality of the evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987).  "'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'" *Schaal*, 134 F.3d at 504 (quoting *Johnson*, 817 F.2d at 986).

**IV.     Plaintiff's Alleged Disability and the Treating Physician Rule**

It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw*, 221 F.3d at 134; *see* 20 C.F.R. § 404.1527(d)(2).  In determining what weight to give a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist.  20 C.F.R. §404.1527(d).  Further, and most significantly here, the ALJ must articulate her reasons for assigning the weight that she does accord to both treating and nontreating physicians' opinions.  *See* 20 C.F.R. §404.1527(d)(2) ("[w]e will always give good reasons in our . . . decision for the weight we give your treating source's opinion"); §404.1527(f)(2)(ii) (where treating source is not given controlling weight, "the [ALJ[ must explain in the decision the weight given to the opinions of [consulting or nonexamining physicians], as the [ALJ] must do for any opinions from treating sources . . ."). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *quoting Schaal*, 134 F.3d at 505.

Plaintiff contends that the ALJ failed to explain the weight afforded to one of plaintiff's treating physicians, Dr. Vikas Singla, and that Dr. Singla's opinion concerning plaintiff's RFC should have been granted controlling weight.

Initially, I find that the ALJ properly rejected Dr. Singla's opinion, and adequately explained his reasons for doing so.  As the ALJ explained, Dr. Singla's assessment of plaintiff's physical limitations was entitled to "little weight" because it was "not supported by objective clinical or laboratory findings."  (Tr. 19).  Indeed, the ALJ noted that the record, as a whole, contained a "remarkable lack of objective medical evidence or frequency of treatment to support the claimant's alleged severity of his impairments . . ." *Id.*

I concur with the ALJ's observation, and agree that his explanation for rejecting Dr. Singla's opinion is well-supported by the evidence.  Dr. Singla's March 26, 2010 RFC assessment describes an extent of limitation found nowhere else in the record.  He opines that plaintiff can sit or stand no more than 45 minutes at a time, must take 2 or 3 unscheduled 15-minute breaks per work day, requires a cane or assistive device to ambulate, cannot lift ten or more pounds, can rarely stoop, crouch or climb stairs and never climb ladders, and would need to be absent from work for 2 or 3 days every month.  (Tr. 479-82).  At the same time, Dr. Singla's treatment notes reflect diagnoses of lumbosacral spine pain and "mild" knee pain, treated and evidently controlled with pain relief medications, given that plaintiff's medications were continued without any changes or recorded complaints of pain.  (Tr. 475-78, 498-501).  Further, the records by Dr. Singla are sparse, reflecting only two or three visits from 2009 to 2010 (Tr. 475 et seq.) and are not indicative of a regular course of comprehensive treatment over any significant portion of the time period in question.  Dr. Singla appears to be a recent addition to plaintiff's medical care providers: at the time of his application for benefits on or about April 9, 2008, plaintiff did not identify Dr. Singla as one of his doctors.  (Tr. 189).

Dr. Singla's opinion as to the physical limitations posed by plaintiff's knee and back pain also conflicts with other medical evidence of record.  A spinal MRI was performed November 11, 2003, which showed only "slight compression of C5 vertebra without acute edema or acute abnormalities [and] minimal degenerative changes and disc bulges . . . without focal disc herniation, spinal cord compression or central spinal stenosis." (Tr. 322).  In general, plaintiff's" thoracic spine x-rays are completely unremarkable." (Tr. 382).  With regard to plaintiff's alleged knee pain, plaintiff underwent knee surgery on February 21, 2006, with a "prognosis . . . hopeful for elimination of his preoperative pain." (Tr. 340).  Surgical follow-up records reflect that the "surgery went very well" and that plaintiff experienced satisfactory healing with "minimal symptoms."  Plaintiff later voluntarily discontinued post-operative physical therapy (Tr. 344, 345, 347, 349, 350, 352, 356).  On July 7, 2006, treating physician, Martin Gingras, reported that plaintiff was doing "extremely

well" following the surgery, had "no swelling . . . excellent motion [and no] pain with patella compression," and could "return to work without restrictions" as of August 1, 2006.  (Tr. 352). Subsequent to 2006, there are no appreciable indications in the record – outside of Dr. Singla's RFC report, the basis for which is unclear – that plaintiff continued to suffer from disabling knee or back pain.

Plaintiff also argues that the ALJ erred by failing to consult a vocational expert and relying instead on the Medical-Vocational Guidelines in determining whether there was work in the national economy that Plaintiff could perform, because plaintiff's ability to do sedentary work was compromised by plaintiff's moderate difficulty in the area of social functioning and mild difficulties with concentration.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.  It is well settled that if a claimant has nonexertional limitations that "significantly limit the range of work permitted by his exertional limitations," the ALJ is required to consult with a vocational expert to determine whether there are jobs the claimant can perform.  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). However, the "mere existence of a nonexertional impairment does not automatically. . . preclude reliance on the guidelines."  *Id*. at 603.  A nonexertional impairment "significantly limit[s]" a claimant's range of work when it causes an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive  him of a meaningful employment opportunity."  *Id*. at 605-06.  The ALJ found that plaintiff's moderate difficulties with social functioning has "little or no effect" on his ability to perform unskilled sedentary work, including carrying out simple, low-stress tasks.  I find no basis to disturb that finding, which is consistent with the evidence of record, including plaintiff's statements concerning his daily activities and his prior work history.  *See e.g.*, Tr. 88-92 (plaintiff testified that he attends church regularly, hosts a Bible study in his home, watches movies, watches television, goes out to eat and spends time with family members and "buddies"); Tr. 260 (examining physician reports that plaintiff's daily activities include "cooking and cleaning"); Tr. 426 (examining physician states that plaintiff says he bathes, dresses himself, cooks, cleans, does laundry, shops, and tries to do

exercises); Tr. 429 (plaintiff reports to examining physician that he cooks, cleans, does laundry, shops, dresses, and sometimes goes out). Because plaintiff's nonexertional limitations do not result in any significant additional loss of capacity to perform unskilled sedentary jobs, the ALJ's use of the Guidelines was permissible. *See Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010); *Davila v. Barnhart*, 2004 U.S. Dist. LEXIS 25332 at *25-*26 (S.D.N.Y. 2004).

Finally, plaintiff contends that the ALJ failed to apply the appropriate legal standards in assessing his credibility. The ALJ concluded that plaintiff's statements concerning the intensity and limiting effects of his symptoms were not credible, given the "remarkable lack of objective medical evidence" supporting his claims. (Tr. 19). A claimant must produce appropriate, probative evidence in support of his statements of symptoms. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). The ALJ is to consider information about a claimant's prior work record as part of the evidence relevant to credibility, as well as the consistency of the individual's statements with information in the record more generally. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). Here, I concur with the ALJ's conclusion that plaintiff's reports of pain and social handicaps so disabling as to preclude sedentary work are unsupported, inconsistent, and in conflict with the other evidence of record, including plaintiff's reports of engagement in physical activity and activities of daily living. *(*Tr. 88-92, 260, 426, 429). Accordingly, I find the ALJ's credibility determination was not based on inappropriate legal standards.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for judgment on the pleadings (Dkt. #7) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #10) is

granted.  The Commissioner's decision that plaintiff is not disabled is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        January 28, 2013.